IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

SPECTOR GROUP 11, LLP,    Civil Action No.: 12-cv-3081

                               Plaintiff,    **AMENDED COMPLAINT**

- and –

SG DESIGN BUILD LLC,

                                                  **JURY TRIAL DEMANDED**

                      Intervenor Plaintiff,

- against –

TRANSPORTATION INSURANCE COMPANY,

                                 Defendants.

- and –

CONTINENTIAL CASUALTY COMPANY,

                     Intervenor Defendant.

------------------------------------------------------------------------x

      Plaintiff Spector Group 11, LLP ("Spector"), by its attorneys, Quinn McCabe LLP, as and for its Amended Complaint against Defendants Transportation Insurance Company ("TIC") and Continental Casualty Company ("CCC") allege as follows:

### THE PARTIES

      1.     At all times hereinafter mentioned, Spector was, and still is, a New York limited liability partnership with a place of business located at 220 Crossway Park West, Woodbury, New York 11797.

2. At all times hereinafter mentioned, Spector was, and still is, a professional architectural firm that provides architectural and related services (collectively, the "Services") to its clients.

3. Upon information and belief, at all times hereinafter mentioned, SG Design Build LLC ("SGDB") was, and still is, a company that provides construction management services to its clients.

4. Upon information and belief, at all times hereinafter mentioned, TIC was, and still is, a foreign corporation with a place of business located at 333 S. Wabash, Chicago, Illinois 60604.

5. Upon information and belief, at all times hereinafter mentioned, TIC was, and still is, an insurance company authorized by the New York State Department of Financial Services to issue commercial general liability insurance policies to insureds in the State of New York.

6. Upon information and belief, at all times hereinafter mentioned, CCC was, and still is, a foreign corporation with a place of business located at 333 S. Wabash, Chicago, Illinois 60604.

7. Upon information and belief, at all times hereinafter mentioned, CCC was, and still is, an insurance company authorized by the New York State Department of Financial Services to issue commercial general liability insurance policies to insureds in the State of New York.

**BACKGROUND FACTS**

8. On or about June 1, 2010, Spector was retained by Scott and Amy Jaffee (collectively, the "Jaffees") to provide certain Services with respect to the renovation and expansion of the Jaffees' residence located at 19 Meadowood Lane, Brookville, New York (the

"Premises"), which included the construction of an approximately 65' by 97' underground sports court (the "Sports Court") (collectively, the "Project").

9. On July 27, 2011, while an excavator operated by the excavation contractor on the Project, G.F. Construction, Inc. ("GFC"), loaded soil onto the deck at the south side of the Sports Court, the deck collapsed (the "Collapse").

10. At the time of the Collapse, two workmen spreading soil on the deck, Jose Aranda ("Aranda") and Jose Guerrero ("Guerrero"), were on the deck of the Sports Court.

11. As a result of the Collapse, Aranda and Guerrero allegedly suffered injuries and the Jaffees allegedly suffered property damage.

12. On July 28, 2011, Spector provided CNA Insurance Company[1] ("CNA"), TIC and CCC with written notice of the Collapse.

13. After Spector provided notice of the Collapse to TIC and CCC, TIC and CCC assigned William Galasso ("Galasso") as the claims representative handling the claim for both TIC and CCC on behalf of Spector.

14. On several occasions, counsel for Spector responded, both orally and in writing, to Galasso's requests for information and documents regarding the Collapse.

15. On several occasions, counsel for Spector advised Galasso, both orally and in writing, that Spector expected claims to be asserted by Aranda and Guerrero for personal injuries allegedly sustained by them as a result of the Collapse.

16. On several occasions, counsel for Spector advised Galasso, both orally and in writing, that Spector expected the Jaffees to assert claims against Spector for property damages and other related damages as a result of the Collapse.

---

[1] CNA was originally named in the Complaint as a defendant but Spector subsequently was notified by counsel for TIC and CCC that CNA is not a legal entity, and that TIC and CCC used the registered service mark "CNA" in connection with the insurance policies at issue in this matter.

17. On or about August 17, 2011, Aranda commenced an action in the Supreme Court of the State of New York, County of Suffolk captioned <u>Jose Antonio Aranda v. Spector Group 11 LLP, et al.</u>, Index No.: 22551/2011 (the "Aranda Action"), in which he named Spector as a defendant.

18. Plaintiff in the Aranda Action asserts claims against Spector for, *inter alia*, injuries allegedly sustained as a result of Spector's alleged negligence.

19. Plaintiff in the Aranda Action alleges that "his injuries are permanent in nature and he will be caused to suffer permanent disability and continuous pain and inconvenience" and "has been unable to attend to his usual occupation and avocation in the manner required and will be permanently incapacitated from doing so in the future."

20. Upon receiving the Summons and Complaint in the Aranda Action, Spector immediately provided a copy to TIC and CCC.

21. On or about September 27, 2011, Guerrero commenced an action in the Supreme Court of the State of New York, County of Suffolk captioned <u>Jose Guerrero v. Spector Group II, LLP d/b/a Spector Group, et al.</u>, Index No.: 1070/2012 (the "Guerrero Action"), in which he named Spector as a defendant.

22. Plaintiff in the Guerrero Action asserts claims against Spector for, *inter alia*, injuries allegedly sustained as a result of Spector's alleged negligence.

23. Plaintiff in the Guerrero Action alleges that he "sustained severe and permanent personal injuries and suffered great pain, physical and mental anguish."

24. Upon receiving the Summons and Complaint in the Guerrero Action, Spector immediately provided a copy to TIC and CCC.

25. On August 1, 2011, Scott Jaffee wrote to Spector and advised Spector that the Jaffees had a claim against Spector and other parties involved in the construction of the Sports Court (the "Jaffees Claim") and directed Spector to place its insurance carriers on notice of such claim.

26. Upon receiving Scott Jaffee's August 1, 2011 letter, Spector immediately advised TIC and CCC that the Jaffees had asserted a claim against Spector and Spector provided a copy of the letter to TIC and CCC.

27. From August 2011 through the end of 2011, Spector's counsel repeatedly advised Galasso, orally and in writing, that the Jaffees had alleged that they had a claim against Spector and had asserted such claim in Scott Jaffee's August 1, 2011 letter.

28. Notwithstanding the Collapse, the Aranda Action, the Guerrero Action and the Jaffees Claim, TIC and CCC failed to respond to Spector's notices of claims with respect to the Collapse.

29. In addition, despite numerous requests that TIC and CCC respond to Spector's notices, Galasso repeatedly advised Spector's counsel, orally and in writing, that the matter was being reviewed by coverage counsel.

30. On May 6, 2012, counsel for the Jaffees provided counsel for Spector with a courtesy copy of a Summons and Complaint in an action venued in the Supreme Court of the State of New York, Nassau County entitled <u>Scott Jaffee & Amy Jaffee v. Spector Group II, LLP, et al.</u> (the "Jaffees Action") in which the Jaffees asserted the Jaffees Claim against Spector and other defendants.

31. On May 6, 2012, Spector provided a copy of the Summons and Complaint in the Jaffees Action to TIC and CCC.

32. On or about February 5, 2013, the Jaffees' property insurance carrier commenced an action seeking, among other things, subrogation in connection with the Collapse entitled <u>Chartis Property Casualty Company as subrogee of Scott Jaffee and Amy Jaffee v. Spector Group 11, LLP</u>, *et al.* (the "Chartis Action").

33. On March 1, 2013, Spector's insurance broker provided a copy of the Summons and Complaint in the Chartis Action to TIC and CCC.

34. TIC issued commercial general liability policy number B 2066377788 (the "TIC Primary Policy") insuring Spector[2] against claims related to its Services for the period from July 16, 2011 through July 16, 2012 (the "TIC Policy Period").

35. TIC issued excess policy number B 2066377743 (the "TIC Excess Policy") insuring Spector[3] against claims related to its Services for the TIC Policy Period.

36. The TIC Primary Policy provides, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if:

    (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
    (b) The "bodily injury" or "property damage" occurs during the policy period; and
    (c) Prior to the policy period, no insured listed under Paragraph C.1. Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

37. The TIC Primary Policy further provides that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages [for "bodily injury" or "property damage"]."

---

[2] Spector is improperly identified as "Spector Group Inc." on the TIC Primary Policy. The proper named insured under the TIC Primary Policy is "Spector Group 11, LLP."
[3] Spector is improperly identified as "Spector Group Inc." on the TIC Excess Policy. The proper named insured under the TIC Excess Policy is "Spector Group 11, LLP."

38.  CCC issued commercial general liability policy number B 4017607295 (the "CCC Primary Policy") insuring TSG Interior Ltd. ("TSG") and naming Spector[4] as an additional named insured against claims related to its Services for the period from July 16, 2011 through July 16, 2012 (the "CCC Policy Period").

39.  CCC issued excess policy number B 4017607474 (the "CCC Excess Policy") insuring TSG and naming Spector[5] as an additional named insured against claims related to its Services for the CCC Policy Period.

40.  The CCC Primary Policy provides, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if:

> (a)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (b)  The "bodily injury" or "property damage" occurs during the policy period; and
> (c)  Prior to the policy period, no insured listed under Paragraph C.1. Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

41.  The CCC Primary Policy further provides that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages [for "bodily injury" or "property damage"]."

42.  Plaintiff in the Aranda Action allegedly suffered bodily injuries as a result of the Collapse while on the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

---

[4] Spector is improperly identified as "Spectors Group LLP DBA Spector Group Architect" on the CCC Primary Policy. The proper named insured under the CCC Primary Policy is "Spector Group II, LLP."

[5] Spector is improperly identified as "Spectors Group LLP DBA Spector Group Architect" on the CCC Excess Policy. The proper named insured under the CCC Excess Policy is "Spector Group II, LLP."

43. Plaintiff in the Guerrero Action allegedly suffered bodily injuries as a result of the Collapse while on the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

44. Plaintiffs in the Jaffees Action allegedly suffered property damage as a result of the Collapse, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

45. The underlying facts in the Chartis Action relate to the property damage resulting from the Collapse, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

46. The Collapse is an occurrence under the TIC Primary Policy and the CCC Primary Policy.

47. Plaintiff in the Aranda Action allegedly suffered bodily injuries during the TIC Policy Period and the CCC Policy Period.

48. Plaintiff in the Guerrero Action allegedly suffered bodily injuries during the TIC Policy Period and the CCC Policy Period.

49. Plaintiffs in the Jaffees Action allegedly suffered property damage and other related damages during the TIC Policy Period and the CCC Policy Period.

50. The underlying facts in the Chartis Action relate to the property damage resulting from the Collapse during the TIC Policy Period and the CCC Policy Period.

51. Prior to the TIC Policy Period and the CCC Policy Period, Spector and/or its employees did not know about the Aranda Action, the Guerrero Action and/or the Jaffees Action because the Collapse which allegedly caused the Aranda bodily injuries, the Guerrero bodily

injuries, and the Jaffees property damage occurred during, not prior to, the TIC Policy Period and the CCC Policy Period.

52. Pursuant to the TIC Primary Policy and the TIC Excess Policy, TIC was required to provide indemnity and a defense to Spector with respect to the Aranda Action, the Guerrero Action, the Jaffees Action and the Chartis Action.

53. Despite repeated requests by Spector to TIC that TIC provide indemnity and a defense to Spector in the Aranda Action, the Guerrero Action, the Jaffees Action and the Chartis Action, TIC has failed and refused to provide such indemnity and defense.

54. Since TIC has failed and refused to indemnify and provide a defense to Spector in the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action, Spector retained counsel to provide a defense to Spector.

55. Pursuant to the CCC Primary Policy and the CCC Excess Policy, CCC was required to provide indemnity and a defense to Spector with respect to the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action.

56. Despite repeated requests by Spector to CCC that CCC provide indemnity and a defense to Spector in the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action, CCC has failed and refused to provide such indemnity and defense.

57. Since CCC has failed and refused to indemnify and provide a defense to Spector in the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action, Spector retained counsel to provide a defense to Spector.

58. On or about October 24, 2012, more than two years from the date of the Collapse and more than five months after the commencement of the Jaffees Action, CCC denied coverage to Spector with respect to the Jaffees Action.

59. On or about October 25, 2012, more than two years from the date of the Collapse and more than one year after the commencement of the Aranda Action and the Guerrero Action, CCC denied coverage to Spector with respect to the Aranda Action and the Guerrero Action.

60. On or about March 19, 2013, more than two years after the date of the Collapse, TIC refused to provide coverage to Spector and purportedly reserved its rights with respect to the Chartis Action.

### AS AND FOR A FIRST CAUSE OF ACTION
(Declaratory Judgment)

61. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "60" of the Complaint as though fully set forth herein.

62. Spector provided notice of the Collapse to TIC and CCC on July 28, 2011, one day after the Collapse.

63. On or about August 1, 2011, the Jaffees asserted the Jaffees Claim in which they claimed against Spector for property damage and other related damages that the Jaffees allegedly sustained during the TIC Policy Period and the CCC Policy Period as a result of the Collapse at the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

64. The Jaffees Claim on its face alleges facts within the coverage of the TIC Primary Policy and the CCC Primary Policy.

65. TIC and CCC have a duty to defend and indemnify Spector with respect to the Jaffees Claim and the Jaffees Action.

66. TIC's and CCC's obligation to defend Spector with respect to the Jaffees Claim and the Jaffees Action exists without regard to whether the Jaffees establish the validity of their contentions.

67. TIC and CCC have improperly failed and refused to provide coverage to Spector with respect to the Jaffees Claim, which arose from the Collapse and failed to timely provide written notice that TIC and CCC were reserving their rights or decline coverage in violation of New York Insurance Law § 3420(d)(2).

68. TIC's and CCC's failure to provide a defense to Spector and indemnify Spector with respect to the Jaffees Claim and the Jaffees Action is without legal basis and is in violation of the TIC Primary Policy, the CCC Primary Policy and New York Insurance Law § 3420(d)(2).

69. TIC's and CCC's failure to provide coverage to Spector with respect to the Collapse, the Jaffees Claim, the Jaffees Action, and the Chartis Action all of which arose from the Collapse, is a real and actual controversy between Spector, TIC and CCC.

70. Plaintiff in the Aranda Action alleges that on or about July 27, 2011, as a result of the Collapse at the Premises, he suffered bodily injuries.

71. Plaintiff in the Aranda Action commenced the Aranda Action in which he asserts claims against Spector for the bodily injuries allegedly sustained during the TIC Policy Period and the CCC Policy Period as a result of the Collapse at the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

72. Prior to the TIC Policy Period and the CCC Policy Period, Spector and/or its employees did not know about the Aranda Action because the Collapse which allegedly caused Plaintiff in the Aranda Action's bodily injuries occurred during, not prior to, the TIC Policy Period and the CCC Policy Period.

73. Spector provided notice to TIC and CCC of the Aranda Action immediately after Spector received notice of the Aranda Action.

74. The Aranda Action on its face alleges facts within the coverage of the TIC Primary Policy and the CCC Primary Policy.

75. TIC and CCC have a duty to defend and indemnify Spector in the Aranda Action.

76. TIC's and CCC's obligation to defend Spector in the Aranda Action exists without regard to whether the Plaintiff in the Aranda Action establishes the validity of his contentions.

77. TIC and CCC have improperly failed and refused to provide coverage to Spector in the Aranda Action and failed to timely provide written notice that TIC and CCC were reserving their rights or decline coverage in violation of New York Insurance Law § 3420(d)(2).

78. TIC's and CCC's failure to provide coverage to Spector in the Aranda Action is without legal basis and is in violation of the Policy.

79. TIC's and CCC's failure to provide coverage to Spector in the Aranda Action is a real and actual controversy between Spector, TIC and CCC.

80. Plaintiff in the Guerrero Action alleges that on or about July 27, 2011, as a result of the Collapse at the Premises, he suffered bodily injuries.

81. Plaintiff in the Guerrero Action commenced the Guerrero Action in which he asserts claims against Spector for bodily injuries allegedly sustained during the TIC Policy Period and the CCC Policy Period as a result of the Collapse at the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

82. Spector provided notice to TIC and CCC of the Guerrero Action immediately after it received notice of the Guerrero Action.

83. The Guerrero Action on its face alleges facts within the coverage of the TIC Primary Policy and the CCC Primary Policy.

84. TIC and CCC have a duty to defend and indemnify Spector in the Guerrero Action.

85. TIC's and CCC's obligation to defend Spector in the Guerrero Action exists without regard to whether the Plaintiff in the Guerrero Action establishes the validity of his contentions.

86. TIC and CCC have improperly failed and refused to provide coverage to Spector in the Guerrero Action.

87. TIC's and CCC's failure to provide coverage to Spector in the Guerrero Action is without legal basis and is in violation of the TIC Primary Policy and the CCC Primary Policy.

88. TIC's and CCC's failure to provide coverage to Spector in the Guerrero Action is a real and actual controversy between Spector, TIC and CCC.

89. Based upon the foregoing, Declaratory Judgment should be granted requiring TIC and CCC to defend and indemnify Spector with respect to the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract)

90. Plaintiff repeats and realleges each and every allegation contained in Paragraphs "1" through "89" of the Complaint as though fully set forth herein.

91. The TIC Primary Policy and the TIC Excess Policy constitute contracts between TIC and Spector.

92. The TIC Primary Policy provides that "[t]his insurance applies to 'bodily injury' and 'property damage' only if:

> (d) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  (e) The "bodily injury" or "property damage" occurs during the policy period; and

  (f) Prior to the policy period, no insured listed under Paragraph C.1. Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

93. The TIC Primary Policy further provides that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages [for "bodily injury" or "property damage"]."

94. The CCC Primary Policy and the CCC Excess Policy constitute contracts between CCC and Spector.

95. The CCC Primary Policy provides that "[t]his insurance applies to 'bodily injury' and 'property damage' only if:

  (g) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

  (h) The "bodily injury" or "property damage" occurs during the policy period; and

  (i) Prior to the policy period, no insured listed under Paragraph C.1. Who is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

96. The CCC Primary Policy further provides that "[w]e will have the right and duty to defend the insured against any 'suit' seeking those damages [for "bodily injury" or "property damage"]."

97. Plaintiff in the Aranda Action allegedly suffered bodily injuries as a result of the Collapse while on the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

98. Plaintiff in the Guerrero Action allegedly suffered bodily injuries as a result of the Collapse while on the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

99. Plaintiffs in the Jaffees Action allegedly suffered property damage as a result of the Collapse while on the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

100. The underlying facts in the Chartis Action relate to the property damage resulting from the Collapse, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy.

101. Plaintiff in the Aranda Action allegedly suffered bodily injuries during the TIC Primary Policy Period and the CCC Primary Policy Period.

102. Plaintiff in the Guerrero Action allegedly suffered bodily injuries during the TIC Primary Policy Period and the CCC Primary Policy Period.

103. Plaintiffs in the Jaffees Action and the Chartis Action allegedly suffered property damage during the TIC Primary Policy Period and the CCC Primary Policy Period.

104. The underlying facts in the Chartis Action relate to the property damage resulting from the Collapse during the TIC Primary Policy Period and the CCC Primary Policy Period.

105. Prior to the TIC Policy Period and the CCC Policy Period, Spector and/or its employees did not know about the Aranda Action, the Guerrero Action, the Jaffees Action or the Chartis Action because the Collapse which allegedly caused the Aranda bodily injuries, the Guerrero bodily injuries, and the Jaffees property damage occurred during, not prior to, the TIC Primary Policy Period and the CCC Primary Policy Period.

106. Upon learning of the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action, Spector immediately reported the claims to TIC and CCC.

107. TIC and CCC have a duty to defend and indemnify Spector in the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action.

108. TIC's and CCC's obligation to defend Spector in the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action exists without regard to whether the Plaintiffs in the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action establish the validity of their contentions.

109. TIC and CCC have improperly failed and refused to provide coverage to Spector in the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action and failed to timely provide written notice that TIC and CCC were reserving their rights or decline coverage in violation of New York Insurance Law § 3420(d)(2).

110. TIC's and CCC's failure to provide a defense to Spector and indemnify Spector in the Aranda Action, the Guerrero Action, the Jaffees Action and the Chartis Action is without legal basis and is a breach of the TIC Primary Policy and the CCC Primary Policy.

111. Spector was, and continues to be, damaged as a result of TIC's and CCC's breaches.

112. Based upon the foregoing, TIC is liable to Spector for the breach of the TIC Primary Policy and CCC is liable to Spector for the breach of the CCC Primary Policy, in amounts to be determined by this Court not less than the jurisdictional minimum, together with attorney's fees, interest, costs and expenses.

**WHEREFORE**, Plaintiff respectfully demands judgment against Defendants: (1) for declaratory judgment determining that TIC and CCC are required to indemnify and provide a

defense to Spector with respect to the Collapse, the Aranda Action, the Guerrero Action, the Jaffees Action, and the Chartis Action; (2) that TIC is in breach of contract with respect to the TIC Primary Policy and that CCC is in breach of contract with respect to the CCC Primary Policy; and (3) for such other and further relief as this Court deems just and proper.

Dated: New York, New York
       June 14, 2013

                            QUINN McCABE LLP

                            Todd J. DeSimone, Esq.
                            *Attorneys for Plaintiff*
                            *Spector Group 11, LLP*
                            9 East 40th Street, 14th Floor
                            New York, NY 10016
                            (212) 447-5500

To:    Greta A. Matzen, Esq.
        Colliau Carluccio Keener Morrow Peterson & Parsons
        *Attorneys for Defendants*
        *Transportation Insurance Company*
        *and Continental Casualty Company*
        333 South Wabash Avenue
        25th Floor
        Chicago, IL 60604
        (312) 822-6603

        L. Donald Prutzman, Esq.
        Matthew R. Maron, Esq.
        Tannenbaum Helpern Syracuse & Hirschtritt, LLP
        *Attorneys for Plaintiff*
        *SG Design Build LLC*
        900 Third Avenue
        New York, NY 10022
        (212) 508-6700