

**QUINN McCABE LLP**
COUNSELORS AT LAW

9 EAST 40TH STREET, 14TH FLOOR, NEW YORK, NEW YORK 10016
212.447.5500 (main) · 212.889.2981 (fax)

January 9, 2014

**VIA ELECTRONIC FILING**

Hon. Judge Leonard D. Wexler
United States District Court
Eastern District of New York
Long Island Federal Courthouse
944 Federal Plaza
Central Islip, New York 11722

Re: Spector Group 11, LLP v. Transportation Insurance Co., et al.
– Index No.: CV 12-3081

Dear Judge Wexler:

We serve as counsel to Plaintiff, Spector Group 11, LLP ("Spector"), in the above-referenced matter. Please allow this communication to serve as Spector's request for a pre-motion conference before Your Honor. Spector requests a pre-motion conference in order to obtain Your Honor's consent to move, pursuant to Federal Rules of Civil Procedure Rule 56(a), for summary judgment against defendant, Transportation Insurance Company ("TIC"), and intervenor defendant, Continental Casualty Company ("CCC") (TIC and CCC are sometimes collectively referred to as, the "Defendants"). This action seeks, *inter alia*, a declaratory judgment that insurers CCC and TIC are obligated to defend and indemnify Spector in connection with several actions arising from a construction accident on July 27, 2011, as more fully described below. The undisputed facts demonstrate that CCC's and TIC's denials of coverage were untimely as a matter of law. As a result, under New York Insurance Law § 3420(d)(2) and New York common law Defendants are prohibited as a matter of law from disclaiming coverage based on the policy exclusions upon which they rely. Further, the other grounds on which Defendants deny coverage are invalid as a matter of law. Accordingly, as more fully explained below, Spector is entitled to summary judgment declaring that Defendants are obligated to defend and indemnify Spector in connection with the accident.

As set forth at length in Spector's Complaint dated May 9, 2012 and Spector's Amended Complaint dated June 14, 2013 (collectively, the "Declaratory Judgment Action"), on or about June 1, 2010, Spector was retained by Scott and Amy Jaffee (collectively, the "Jaffees") to provide certain architectural services (the "Services") with respect to the renovation and expansion of the Jaffees' residence (the "Premises"), which included the construction of an underground sports court (the "Sports Court") (collectively, the "Project"). On July 27, 2011, while an excavator operated by the excavation contractor on the Project loaded soil onto the deck of the Sports Court, the deck collapsed (the "Collapse"). At the time of the Collapse, two

workmen spreading soil onto the deck, Jose Aranda ("Aranda") and Jose Guerrero ("Guerrero"), were on the deck of the Sports Court. As a result of the Collapse, Messrs. Aranda and Guerrero allegedly suffered injuries and the Jaffees allegedly suffered property damage.

On July 28, 2011, Spector, through its insurance broker, provided TIC and CCC with written notice of the Collapse. After Spector provided notice of the Collapse to TIC and CCC, TIC and CCC assigned William Galasso ("Galasso") as the claims representative handling the claim on behalf of Spector. On several occasions, counsel for Spector advised Galasso, both orally and in writing, that Spector expected claims to be asserted by Aranda and Guerrero for personal injuries allegedly sustained by them as a result of the Collapse, and claims to be asserted by the Jaffees for property damages as a result of the Collapse. On or about August 17, 2011, Aranda commenced an action in the Supreme Court of the State of New York (Suffolk County) (the "Aranda Action") against, *inter alia*, Spector for alleged injuries resulting from Spector's alleged negligence. Upon receiving the Summons and Complaint in the Aranda Action, Spector immediately provided a copy to TIC and CCC. On or about September 27, 2011, Guerrero commenced an action in the Supreme Court of the State of New York (the "Guerrero Action") against, *inter alia*, Spector for alleged injuries resulting from Spector's alleged negligence. Upon receiving the Summons and Complaint in the Guerrero Action, Spector immediately provided a copy to TIC and CCC.[1] In addition, despite numerous requests that TIC and CCC respond to Spector's notices, Galasso repeatedly advised Spector's counsel, orally and in writing, that the matter was being reviewed by coverage counsel.

On August 1, 2011, Scott Jaffee wrote to Spector and advised Spector that the Jaffees had a claim against Spector (the "Jaffees Claim") and directed Spector to place its insurance carrier on notice of such claim. Upon receiving the Jaffees' letter, Spector immediately advised TIC and CCC that the Jaffees had asserted a claim against Spector and Spector provided a copy of the Jaffees' letter to TIC and CCC. On May 6, 2012, counsel for the Jaffees provided counsel for Spector with a courtesy copy of a Summons and Complaint for an action in the Supreme Court of the State of New York (the "Jaffees Action"), wherein the Jaffees asserted the Jaffees Claim against, *inter alia*, Spector. On May 6, 2012, Spector provided a courtesy copy of the Summons and Complaint in the Jaffees Action to TIC and CCC.

On February 5, 2013, the Jaffees' property insurance carrier commenced an action seeking, among other things, subrogation in connection with the Collapse entitled <u>Chartis Property Casualty Company as subrogee of Scott Jaffee and Amy Jaffee v. Spector Group 11, LLP, *et al.*</u> (the "Chartis Action"). On March 1, 2013, Spector's insurance broker provided a copy of the Summons and Complaint in the Chartis Action to TIC and CCC. On March 19, 2013, Galasso issued a letter to Spector acknowledging that TIC and CCC have received the Summons and Complaint in the Chartis Action and that they were investigating the matter to determine whether coverage is available. Spector has not received any further communications from TIC and CCC since their March 19, 2013 acknowledgement of claim letter.

---

[1] On March 1, 2013, the Aranda Action and the Guerrero Action were consolidated. The consolidated action is venued in the Supreme Court of the State of New York, Suffolk County.

TIC issued commercial general liability policy number B 2066377788 (the "TIC Primary Policy") insuring Spector against claims related to its Services for the period from July 16, 2011 through July 16, 2012 (the "TIC Policy Period"). TIC also issued excess policy number B 2066377743 (the "TIC Excess Policy") insuring Spector against claims related to its Services for the TIC Policy Period. The TIC Primary Policy provides, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if:

> (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (b) The "bodily injury" or "property damage" occurs during the policy period; and
> (c) Prior to the policy period, no insured listed under Paragraph C.1. Who is An Insured and no "employee" authorized by you to give or receive CNA of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

\* \* \*

> [w]e will have the right and duty to defend the insured against any 'suit' seeking those damages [for "bodily injuries" or "property damage"].

CCC issued commercial general liability policy number B 4017607295 (the "CCC Primary Policy") insuring TSG Interior Ltd. ("TSG") and naming Spector as an additional insured against claims related to its Services for the period from July 16, 2011 through July 16, 2012 (the "CCC Policy Period"). SG Design Build LLC ("SG Design") is also named as an additional insured on the CCC Primary Policy and was involved with the Project. CCC also issued excess policy number B 4017607474 (the "CCC Excess Policy") insuring TSG and naming Spector as an additional insured against claims related to its Services for the CCC Policy Period. The CCC Primary Policy provides, in relevant part, that "[t]his insurance applies to 'bodily injury' and 'property damage' only if:

> (d) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
> (e) The "bodily injury" or "property damage" occurs during the policy period; and
> (f) Prior to the policy period, no insured listed under Paragraph C.1. Who is An Insured and no "employee" authorized by you to give or receive CNA of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.

\* \* \*

> [w]e will have the right and duty to defend the insured against any 'suit' seeking those damages [for "bodily injuries" or "property damage"].

Plaintiffs in the Aranda Action and the Guerrero Action allegedly suffered bodily injuries as a result of the Collapse while on the Premises, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy. Plaintiffs in the Jaffees Action allegedly suffered property damage as a result of the Collapse, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy. The underlying facts in the Chartis Action relate to the property damage resulting from the Collapse, which is a covered territory under the TIC Primary Policy and the CCC Primary Policy. The Collapse is an occurrence under the TIC Primary Policy and the CCC Primary Policy. Moreover, Plaintiffs in the Aranda Action, the Guerrero Action, and the Jaffees Action suffered their injuries and/or damage during the TIC Policy Period and the CCC Policy Period. The underlying facts in the Chartis Action relate to the property damage resulting from the Collapse during the TIC Policy Period and the CCC Policy Period.

On May 10, 2012 (incorrectly dated April 10, 2012), almost ten months from the date of the Collapse and more than seven months after the commencement of the Aranda Action and the Guerrero Action, TIC attempted to accept the defense of Spector in the Aranda Action and the Guerrero Action but only on the condition that such defense be subject to a complete reservation of rights by TIC. On May 16, 2012, on behalf of Spector, we responded to Galasso's letter wherein we objected to the condition to TIC's agreement to provide a defense. TIC's issuance of a defense subject to a complete reservation of its rights after a delay of nearly ten months from the date of the Collapse is unreasonable as a matter of law. Pursuant to New York Insurance Law § 3420(d), an insurer is to give notice of disclaimer of liability or denial of coverage as soon as is reasonably possible. Untimely notice of denial based on an exclusion of coverage is ineffective and such exclusion will not bar coverage. While unreasonable delay is an "inherently factual" inquiry, fifteen months is categorically unreasonable and five and a half months is very likely unreasonable, based on recent case law. City of New York v. Greenwich Ins. Co., 95 A.D.3d 732, 733, 945 N.Y.S.2d 83, 84 (2012).

On June 4, 2012, almost eleven months from the date of the Collapse and the Jaffees' letter to Spector, TIC denied coverage to Spector for the Jaffees Action. TIC claimed that coverage was not available because under the Policy, an "occurrence" did not take place in order to trigger coverage. TIC further states that an occurrence did not occur because the only damage to be remedied is the faulty work itself, not any damage to the part of the property on which Spector was working. This claim has no merit. An "occurrence for liability insurance purposes is often defined as an accident." Saks v. Nicosia Contracting Corp., 215 A.D.2d 832, 833 (3d Dep't 2002). "In construing the term occurrence in liability policies the courts have looked to the injury, not the act which produced the injury." Id. at 833-34. In determining whether an occurrence, or an accident, has in fact occurred for the purposes of a liability policy, courts consider such terms in the light most favorable to the insured and, "regardless of the initial intent or lack thereof as it relates to causation, or the period of time involved, if the resulting damage could be viewed as unintended by the fact finder the total situation could be found to constitute

an accident." McGroaty v. Great Am. Ins. Co., 36 N.Y.2d 358, 364-65 (1975) (adopting the "transaction as a whole test" in analyzing whether constituent acts which make up a transaction constitute an "occurrence"). It is difficult to imagine a situation where an "accident" would have been found more likely to occur than a situation similar to the Collapse. Considering the Collapse under the "transaction as a whole test", and not just the individual acts which caused the Collapse, it is clear that the resulting harm to the Jaffees' property and the personal injuries to Guerrero and Aranda constitute an "accident" within any reasonable purview and is thus an "occurrence" within the meaning of the TIC Primary Policy.

Moreover, TIC also states that even if an "occurrence" did occur under the Policy, the "Damage to Impaired Property Or Property Not Physically Injured" exclusion precludes Spector from coverage because the property damage was a result of Spector's "work" on the Project. As made clear above, TIC's delay (of nearly eleven months in this instance) is categorically unreasonable as a matter of law and thus TIC's reliance on an exclusion to the TIC Primary Policy as a basis to deny coverage is ineffective. Without any reasonable excuse, which TIC has yet to proffer, TIC cannot rely on an exclusion. First Fin. Ins. Co. v. Jetco Contracting Corp., 1 N.Y.3d 64, 66, 801 N.E.2d 835, 837 (2003) (even just forty-eight days delay in insurer denying based on exclusion was deemed unreasonable without an excusable justification).

On October 24, 2012, more than two years from the date of the Collapse and more than five months after the commencement of the Jaffees Action, CCC denied coverage to Spector with respect to the Jaffees Action. CCC claimed that coverage was not available because under the Policy, an "occurrence" did not take place in order to trigger coverage. CCC claimed that since the property damage resulted from Spector's own "work" on the Project, an occurrence did not occur. This is essentially the same argument that TIC made to deny coverage under the TIC Primary Policy, discussed above. As New York courts agree, liability insurance insures against "faulty workmanship in the work product which creates a legal liability by causing bodily injury or property damage to something other than the work product." George A. Fuller Co. v. U.S. Fidelity and Guar. Co., 200 A.D. 2d 255, 259 (1st Dep't 1994). There is an important difference to be noted though, as "the liability policy does not insure against faulty workmanship in the work product itself but rather workmanship" which results in liability for bodily injury and property damage. Saks, 215 A.D. 2d at 834. Moreover, CCC claims that coverage is also not available under the CCC Primary Policy since Spector's work resulted in the property damage at the Premises. CCC also refers to several exclusions in the CCC Primary Policy, which it claims bars Spector from receiving coverage. Again, as made obvious above, CCC's reliance on the exclusions is belated and thus ineffective. Waiting until more than two years after the accident and five months after the initiation of the Jaffees Action was indisputably unreasonable as a matter of law. CCC had the facts on which it based its exclusion long before issuing the denial based on such exclusions, making such exclusions untimely. Stout v. 1 E. 66th St. Corp., 90 A.D.3d 898, 901, 935 N.Y.S.2d 49, 54 (2011) ("an insurer's delay is measured from the point at which it has sufficient knowledge of facts entitling it to disclaim, or knows that it will disclaim coverage.").

On October 25, 2012, more than two years from the date of the Collapse and more than one year after the commencement of the Aranda Action and the Guerrero Action, CCC denied

coverage to Spector with respect to the Aranda Action and the Guerrero Action. CCC claimed that the CCC Primary Policy's "construction management errors and omissions exclusion" bars Spector from receiving coverage. CCC's disclaimer of coverage predicated on this exclusion again renders the exclusion ineffective and necessitates that coverage be provided as a matter of law. "Stated otherwise, a failure by the insurer to give such notice as soon as reasonably possible *after it first learns of the accident or grounds* for disclaimer of liability or denial of coverage, precludes effective disclaimer or denial." George Campbell Painting v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 92 A.D.3d 104, 114, 937 N.Y.S.2d 49, 54 (2011).

Pursuant to the TIC Primary Policy, the CCC Primary Policy, the TIC Excess Policy and the CCC Excess Policy, TIC and CCC were required to provide indemnity and a defense to Spector with respect to the Aranda Action, the Guerrero Action, the Jaffees Action and the Chartis Action. Despite repeated requests by Spector to TIC and CCC that TIC and CCC provide indemnity and a defense to Spector in the Aranda Action, the Guerrero Action, and the Jaffees Action, TIC and CCC have failed and refused to provide such indemnity and defense. With respect to the Chartis Action, TIC and CCC have not even rendered a decision about coverage, even though they received notice of the Chartis Action over eight months ago. Under the circumstances of this matter, TIC and CCC are required to defend and indemnify Spector in the Aranda Action, the Guerrero Action, the Jaffees Action and the Chartis Action under the doctrine of equitable estoppel. As a result of TIC's and CCC's failure to provide indemnity and a defense, Spector commenced its Declaratory Judgment Action. Spector would like to file a motion for summary judgment with respect to whether TIC and CCC are now prohibited from disclaiming coverage pursuant to Insurance Law § 3420(d)(2) and case law which clearly holds that late denial of coverage based on policy exclusions is prohibited. Spector will also be seeking reimbursement of the defense costs it has incurred in defending itself in the Aranda Action, the Guerrero Action, the Jaffees Action and the Chartis Action. If Spector is successful on its motion, no further discovery will be necessary on the facts relating to the Collapse. Indeed, Spector's entire argument is based on documentary discovery and can be decided as a matter of law, without further discovery in this matter.

Pursuant to the above, TIC and CCC are required, as a matter of law, to provide an indemnity and defense to Spector with respect to the Aranda Action, the Guerrero Action, the Jaffees Action and the Chartis Action. Spector respectfully requests that a pre-motion conference be scheduled in this matter so that Spector can obtain Your Honor's consent to move, pursuant to Federal Rule of Civil Procedure Rule 56(a), for summary judgment against TIC and CCC based on its Declaratory Judgment Action.

Respectfully submitted,

Todd J. DeSimone

Hon. Judge Leonard D. Wexler
January 9, 2014
Page 7 of 7

cc: Christopher P. McCabe, Esq. (via e-mail)

   Greta Matzen, Esq. (via electronic filing)
   Colliau Carluccio Kenner Morrow
   Peterson & Parsons
   333 S. Wabash Avenue, 25th Floor
   Chicago, IL 60606

   Matthew R. Maron, Esq. (via electronic filing)
   Donald Prutzman, Esq. (via electronic filing)
   Tannenbaum Helpern Syracuse
   & Hirschtritt LLP
   900 Third Avenue
   New York, NY 10022